STATE *v.* FROST.

*(Nashville.* January 6, 1900.)

1. MUNICIPAL CORPORATIONS. *Charter void, when.*

Strict and literal compliance with statutory requirements is essential in proceedings for the incorporation of a municipality. Hence, a municipal charter is void if it does not appear that the application or charter was registered as required by statute. Production of the charter in proof by the County Register, without his certificate of its registration, affords no presumption that it has been registered. *(Post, pp. 688, 689.)*

Code construed: § 1897 (S.).

Cases cited and approved: Woodbury *v.* Brown, 101 Tenn., 707; Ruohs *v.* Athens, 91 Tenn., 25.

2. SAME. *No estoppel to assert invalidity of charter.*

The dismissal of a suit brought to enjoin the incorporation of a municipality upon the ground that the proceedings were fraudulent and intended to evade the four-mile law, does not prevent or estop anyone in a subsequent suit to insist upon the invalidity of the charter on account of failure to comply with essential requirements of the statutes, especially when such defects occurred subsequent to such dismissal. *(Post, pp. 689, 690.)*

3. SAME. *Active operations required under four-mile law.*

To render sales of liquor within four miles of a school-house legal as having been made within an incorporated town, there must be not only a valid incorporation of the town, but active organization and operation, in good faith and for corporate purposes must be maintained under its charter. *(Post, pp. 690–693.)*

Cases cited and approved: State *v.* Waggoner, 88 Tenn., 294; Buck *v.* State, 5 Lea, 351.

4. SAME. *Power of Legislature over.*

The Legislature has absolute power over the creation of municipal corporations. It may, at its pleasure, provide for their

State *v.* Frost.

creation, or prohibit their creation altogether. It dictates the terms upon which municipal charters shall be granted. It confers such powers and duties and imposes such burdens and restrictions upon them as are deemed expedient. (*Post, p. 695.*)

5. CONSTITUTIONAL LAW. *Amendment of four-mile law.*

Acts 1899, Ch. 221, which makes all municipal corporations, created after its passage, with not exceeding two thousand inhabitants, subject to the operation of the four-mile law, is constitutional and valid. If the classification doctrine applies to statutes of this character, the classification of this statute is not arbitrary and capricious, but natural and reasonable. (*Post, pp. 693–697.*)

Constitution construed: Art XI., §8.

Act construed: Acts 1899, Ch. 221.

Cases cited and approved: Railroad *v.* Harris, 99 Tenn., 708; Ballentine *v.* Pulaski, 15 Lea, 633; Williams *v.* Nashville, 89 Tenn., 487; Reelfoot Lake Dist. *v.* Dawson, 97 Tenn., 153; Burnett *v.* Maloney, 97 Tenn., 697.

Cited and distinguished: Hatcher *v.* State, 12 Lea, 368.

FROM HOUSTON.

Appeal in error from Circuit Court of Houston County. A. H. MUNFORD, J.

J. C. BRADFORD and J. L. FRAZEE for Frost.

ATTORNEY-GENERAL PICKLE for State.

WILKES, J. The defendants were prosecuted for unlawfully selling liquors. They were tried in the Court below before the Judge, a jury being waived, and were each fined $50 and costs, and

were each sentenced to sixty days' confinement in the county workhouse, and each has appealed, and, through counsel, has assigned errors.

There are three counts in the presentment—the first charging the sales to have been made within four miles of a schoolhouse, the second charging the sales to have been made within four miles of an incorporated institution of learning, and the third charging that the sales were in violation of the Acts of 1899, Chap. 221.

The finding of the trial Judge was that the defendants were guilty of unlawfully selling intoxicating liquors as a beverage within four miles of a schoolhouse.

The proof showing sales of such liquors within four miles of a schoolhouse is abundant and is not denied, but is conceded, and excused or justified on the ground that they were within the limits of an incorporated town, and were not, therefore, unlawful.

It is conceded that the sales are contrary to the provisions of the Acts of 1899, Chap. 221; but it is insisted that this Act is unconstitutional and invalid, and hence, the incorporation being legal, the sale is permitted and lawful under the laws existing prior to the passage of said Act.

The State insists that the corporation is a sham and device to evade the operation of the law usually called the "four-mile law," which prohibits

the sale of intoxicating liquors within four miles of an institution of learning; that the requirements of the statute as to the formation of corporations have not been complied with by it, and that the Act is constitutional and valid.

The statutes provide that any part of a county not within any municipality may be incorporated by any number of legal voters over fourteen, being freeholders, and residing within the territory to be incorporated. Shannon, Secs. 1881, 1882, and subsequent provisions of the same compilation, give in detail the proceedings that are required to form the corporation, and provide that unless they are complied with the incorporation shall be void.

It is insisted that the record shows a complete compliance with all the requirements of the statutes relating to the obtaining of charters. These requirements are numerous; they are set out with much of detail in Shannon's compilation, Secs. 1881 to 1902, inclusive, and are epitomized in the case of *Woodbury* v. *Brown,* 101 Tenn. (17 Pickle, 707). In that case it is said that all these requirements must be strictly and literally complied with to render the charter valid. We cannot now take the time to enumerate them all. They are crude as a system and somewhat obscure.

What purports to be the charter is set out in the record in the cross-examination of the wit-

ness, Cooley. It shows a somewhat informal compliance with many of the requirements. We do not find in the record any application for the charter, as Sec. 1882 rqeuires. We do not find any evidence of the poll book required in Sec. 1883, nor the verification prescribed in Sec. 1884. We do not find any evidence of the notice prescribed in Sec. 1887. Some of these matters are certified to by the County Court Clerk. We do not find any evidence that the application or charter was ever registered, as required by Sec. 1897, in the county of Houston, where the corporation is to have its situs. It is true that Cooley, the Register of the county, when cross-examined, stated that he produced the charter and set it out in *haec verba,* but he does not state that it was ever registered. This registration is essential to the validity of the corporation, and without it the corporation is invalid. Shannon, Secs. 1897 to 1899; *Woodbury* v. *Brown,* 17 Pickle, 707; *Ruohs* v. *Athens,* 7 Pickle, 25.

We cannot presume from the mere fact recited in the record that the Register of the county presented the charter, that it was registered: besides, the fact that the charter, on being set out, has no certificate of registration, negatives any such presumption, if it could arise.

It is said, also, that the corporation is not made in good faith, but is a mere sham to

19 P—44

evade the laws relating to the sale of intoxicating liquors. During the pendency of the proceedings for obtaining the charter, and when they had so far progressed as that an election was about to be held, a bill was filed in chancery to enjoin further proceedings upon the grounds above stated. The case so far progressed that this Court affirmed the decree of the Court of Chancery Appeals, which held that the incorporation could not be enjoined upon the ground of fraudulent purpose; but that if the requisite steps were taken as prescribed by statute, the charter could be obtained and the incorporation had. That case, however, turned upon the effect of the fraudulent purpose to evade the law, and not upon any defects in the steps taken to comply with the statutory requirements, and the defect now pointed out did not then exist, as the proceedings had not reached that stage of the incorporating process. This being so, the prior adjudication in that case is not conclusive of the questions raised in this. It was developed in that case, and in the evidence in the present case, that the town of Erin, containing 1,200 or 1,500 people, had surrendered its charter in order to prevent the sale of intoxicating liquors near its schools, in which the defendant had unlawfully and persistently engaged, and thereupon the defendant, Frost, with others, had surveyed a plat of some five or six acres of ground contiguous to Erin and proceeded

to have the same incorporated. The new town was to be situated about half way between Erin and Arlington, and was to be called "Midway." There were only fifteen voters within the limits of the proposed corporation, and its entire population was less than 100. It had no business house in it, except the saloon of the defendant, Frost, which was erected immediately upon the incorporation, and the sale of liquors began before any corporate acts were done thereunder. It appears that the defendant, Frost, was elected Mayor, and a man named Reeves was elected Recorder, but the latter had moved off to some other locality, and ceased to be a citizen. No streets were graded and no fire department or water-works established. No taxes had ever been levied or collected for municipal purposes. The latter omission, so usual in the administration of municipal government, is attempted to be excused on the ground that the Mayor has been kept so busy defending the corporate existence of his town, and has been so continuously in jail since its incorporation, that he has had no opportunity to exercise this customary municipal function, which he will proceed to do so soon as circumstances will permit. It appears that the entire taxable property in the incorporated limits is about $2,100, and that defendant's saloon constitutes about one-third of this.

In view of these facts the State insists that

even if all the requisites to procure incorporation had been complied with, still it was not a going concern and a corporation in active operation, and hence it falls under the rule laid down in the case of the *State* v. *Waggoner,* 4 Pickle, 294, which was a case in which the four-mile law was construed, and in which it was said:

"It has been held that the corporation in which the sale is protected must be an active, vital organization, and if in fact a corporation exists, but is not sustained and kept in organized good faith operation, such sale within four miles of an incorporated institution of learning is unlawful. Two questions are open in such case on this point: 1. Was the original corporation void? 2. If valid, is an active organization and operation in good faith and for corporate purposes maintained? If the charter is absolutely void, of course it can be so treated in any collateral attack. If not void, but there is no organization and operation under it in good faith, this can be shown in proof."

In *Buck* v. *The State,* 5 Lea, 351, it was said:

"It was, in any event, the purpose of the Legislature, in excepting from the general provisions of the Act against the sale of liquors within four miles of an institution of learning, only to except sales within the limits of a town or city actually organized as a corporation. The

existence of a charter not accepted or acted upon in fact would not meet the object or purpose of the exception."

It is said the Act of 1899, Chap. 221, is unconstitutional and void, because it conflicts with Sec. 8, Art. XI., of the Constitution of Tennessee. The argument is that it makes a partial and unequal application of what is called the four-mile law—that is, that liquor is allowed to be sold in incorporated towns of the State having 2,000 inhabitants or less which were in existence prior to the passage of the Act on April 17, 1899, while in such towns incorporated subsequent to that date it could not be sold; and this, it is claimed, is an arbitrary and unnatural classification and discrimination prohibited by the Constitution. To support this view, defendants rely upon the case of *Hatcher* v. *The State,* 12 Lea, 368. In that case the Court considered an Act passed in 1883, amending the four-mile law of 1877 so that is should not apply to the sale of liquors within the limits of corporations organized under the Act of 1882, Chap. 127, known as taxing districts of the second class, to which it was made to apply, and within which such sales were made unlawful. The Court, in that case, held the Act invalid, because it was not a law governing all municipal corporations of the State, but only such as were organized under the Act of 1882, and made sales in such cor-

porations illegal, while in other corporations they were legal.

The question presented is: Does the amending Act of 1899 stand upon the same footing as that of 1883 above referred to? The substance of the Act of 1899 is that sales of intoxicating liquors shall not be made within four miles of an institution of learning, even though it be within an incorporated town, if such town was incorporated after the passage of the Act and does not contain as many as 2,000 inhabitants. The argument is that the effect of the amendment is to distinguish between corporations for municipal purposes by providing that sales may be made in such corporation, no matter how many or few inhabitants it contained, if it was in existence before the Act was passed, but if subsequently chartered, it must contain 2,000 inhabitants in order to make such sales legal. The original Act of 1877, known as the four-mile law, was sustained upon the ground that it was a reasonable police regulation, the theory being that incorporated towns would provide the necessary police force, so as to keep down disturbances and breaches of peace that arise out of the sale and use of intoxicating liquors as a beverage. Carrying out this idea, it is not an unreasonable requirement that the corporation should have as many as 2,000 inhabitants, since it could be fairly presumed that adequate police protection could not be furnished and

maintained in corporations of less size; so that we think if the amendment had been broad enough to apply to all corporations having less than 2,000 inhabitants, it could be no more objectionable than was the original Act in requiring a corporation, in order to legalize the sale, which, if made outside of a corporation, would be illegal. But the argument goes still further, to the effect that a difference and distinction is made between corporations chartered before the Act and those chartered afterwards, though they may each have the same number of inhabitants. Is such a provision unconstitutional? Its operation is wholly prospective, and it has no effect on existing corporations. It operates upon all corporations thereafter to be incorporated. The General Assembly has the right to dictate the terms upon which charters shall be hereafter granted. It may give to future corporations such powers and duties and throw around them such restrictions as it may deem proper. It might, indeed, apply the 2,000 limit to corporations already existing, but it did not see proper to do so. It has not attempted to interfere with existing conditions, but simply to apply a more restricted rule to future corporations. It might have prohibited the creation of any more corporations. If it provides for future corporations, it may dictate the terms of their charter, so that no unreasonable discrimination is made between those in like condition and circumstances, and this

provision applies to all future corporations. The principle decided is analogous to that maintained in *Railroad* v. *Harris,* 99 Tenn., 708, where the legality of a privilege tax upon railroads was sustained, although only two railroads in the State were affected by it and subject to it under the terms of the law.

Even if we concede, therefore, that the classi-. fication doctrine applies to municipal corporations, which admits of grave doubt (*Ballentine* v. *Pulaski,* 15 Lea, 633; *Williams* v. *Nashville,* 89 Tenn., 487; *Reelfoot Lake* v. *Dawson,* 97 Tenn., 153; *Burnett* v. *Maloney,* 97 Tenn., 697), the classification made in this case is not arbitrary and capricious but reasonable and natural, and based upon the idea that sales of intoxicating liquors will be allowed only when adequate police power can be afforded to protect the peace and good order of the locality.

The reasonableness of such classification is emphasized in this case, since it is evident that with a voting population of only fifteen, and a taxable property of only $2,100, no adequate police force could be maintained to preserve society from disturbance and breaches of peace arising out of the sale of intoxicating liquors.

We are of opinion, therefore, that the defendants are not protected by the so-called incorporation in this case, because of the defects in procuring the charter already mentioned, and because

State *v.* Frost.

it is not in good faith an active corporation, and because it violated the Act of 1899 referred to, and said Act is constitutional, and that they have violated the law in making the sales, and the judgment of the Court below is affirmed with costs.

The application for continuance in this case on account of the absence of distinguished foreign counsel was properly refused. It appears that defendants had able local counsel to represent them, and we can see no prejudice to them in the case.