Brinkley *v.* State.

(*Nashville.* March 22, 1902.)

1. FOUR-MILE LAW. *Constitutionality of statutes reaffirmed.*

The constitutionality of the four-mile law and amendatory statutes reaffirmed. (*Post, pp. 476, 477.*)

Acts construed: Acts 1877, Ch. 23; Acts 1887, Ch. 167; Acts 1899, Ch. 221.

Cases cited: State *v.* Rauscher, 1 Lea, 97; Hatcher *v.* State, 12 Lea, 368; Moore *v.* State, 96 Tenn., 544; Harrison *v.* State, 96 Tenn., 548; State *v.* Frost, 103 Tenn., 686; Cole Mfg. Co. *v.* Falls, 92 Tenn., 607.

2. SAME. *Municipal corporation falls within, when.*

A municipal corporation is incorporated after the amendment of the four-mile law by Acts 1899, Ch. 221, with not more than two thousand inhabitants, in such sense as to render sales of liquor made therein and within four miles of a schoolhouse unlawful under that amendment where such municipal corporation existed at the date of the amendment, and had a population of not over two thousand inhabitants under the federal census of 1900, but surrendered its charter and reincorporated with the same territory, under the statutes authorizing such action, after said amendment becomes law. (*Post, pp. 477-480.*)

Act construed: Acts 1899, Ch. 221.

3. MUNICIPAL CORPORATIONS. *Surrender of charter and reincorporation.*

The Legislature has power to authorize by general statutes, not only the incorporation of towns in the first instance, but likewise the surrender of their charters and the adoption of new ones. The charter measures the life, as well as the powers, of a municipal corporation. That life is a distinct and undivisible thing, that begins with the grant and ends with the surrender of the charter. Reincorporation of a town

Brinkley *v.* State.

that has surrendered its charter is not an amendment of the old charter, but a new corporate entity.  (*Post, pp. 481, 482.*)

Acts construed: Acts 1875, Ch. 92; Acts 1877, Ch. 121.

---

FROM   WARREN.

---

Appeal in error from the Circuit Court of Warren County. M. D. SMALLMAN, J.

WM. W. WHITSON, JAS. S. BARTON, F. H. MERCER and SAM T. O'NEAL for Brinkley.

Attorney-General PICKLE and SMITH & SMITH for State.

CALDWELL, J.  J. W. Brinkley prosecutes this appeal in error from a conviction for violating the four-mile law.

That law had its origin in Chap. 23 of the Acts of 1877, which prohibited the sale of "any intoxicating beverage within four miles of any *incorporated* institution of learning in this State" (Sec. 1); provided the prohibition should not apply to sales made "within the limits of any incorporated town" (Sec. 2).

That enactment was held to be constitutional in *State* v. *Rauscher*, 1 Lea, 97; in *Hatcher* v. *State,* 12 Lea, 368, and in numerous other cases. It was changed by Chapter 167 of the Acts

of 1887, which prohibited the sale of "any intox-
icating liquors, including wine, ale, and beer, as
a beverage, within four miles of *any school-house,*
*public or private, where a school is kept, whether*
*the school be then in session or not,* in this
State" (Sec. 1), provided the prohibition, as be-
fore, should not apply to sales made "within the
limits of any incorporated town" (Sec. 2).

The latter act has been enforced in many cases,
among them *Moore v. State,* 96 Tenn., 544, and
*Harrison* v. *State,* Ib., 548.

Its second section was so amended by Sec. 1
of Ch. 221, of the Acts of 1899, as to read
as follows: "That this act shall not apply to
the sale of such liquors within the limits of any
incorporated town, *except towns hereafter incorpo-*
*rated with a population of not more than two*
*thousand inhabitants, by the Federal census of*
1890, *or any other subsequent Federal census."*

This is an amendment by substitution. *Cole*
*Mfg. Co.* v. *Falls,* 92 Tenn., 607. It substitutes
the language just quoted for that of the second
section of the Act of 1887, and thereby extends
the prohibition of the first section of that act so
as to apply to all towns thereafter incorporated
with a population of not more than two thou-
sand by the last preceding census. That act so
enlarged is the law to-day. It was adjudged to
be constitutional in *State* v. *Frost,* 103 Tenn.,
686.

The sale here involved was made on the 7th day of November, 1901, in the town of McMinnville, and within four miles of a school-house, where a school was kept. That town then had a population of 1,980 by the Federal census of 1900.

But the town of McMinnville was incorporated more than fifty years ago, and, consequently, was not subject to the provisions of the four-mile law, unless what is yet to be stated made it so.

Chapter 92 of the Acts of 1875 is entitled, "An act to regulate and organize municipal corporations of certain population, and for the increase and diminution of their powers." The first thirteen sections of that act relate to municipalities originating thereunder, the form of charter of incorporation being prescribed in Sec. 6.

Passing to another branch of the general subject, the fourteenth section provides: "That any town or city of not less than five nor more than twenty thousand inhabitants, by the Federal census of 1870, now incorporated under a general or special law or laws of this State, may adopt the charter contained in this Act, provided a majority of those voting at an election to be held for such purposes shall vote in favor of such adoption, and at such election the ballots of those opposed to the adoption shall contain "old charter," and those in favor of the adoption shall contain "new charter," and the result of such

election, if in favor of adoption, shall be spread on the corporation records, and a certified transcript of such record containing such election shall be filed with the Secretary of State, and said Secretary shall thereupon issue a certificate of incorporation as aforesaid, and such certificate shall be registered as, and shall have force and effect aforesaid; *provided,* however, that no change in the charter of any city or town shall in any wise impair any contracts in existence between such city or town and any person or persons at the time of such change; and when said adoption has been made as aforesaid, and the Secretary's certificate registered as aforesaid, then shall such town or city so adopting have all the powers, rights, privileges, and . benefits conferred by this Act, and the charter of such town or city shall from and after such registration be the charter conferred by this Act, and the former charter of (such) town or city shall be deemed and held forever renounced and surrendered." Acts 1875, Ch. 92, Sec. 14.

That act was subsequently so amended as to extend "all the powers, immunities, and privileges therein granted to municipal corporations, of certain population, *to all municipal corporations in the State, of whatever population,* that shall hereafter bring themselves within the terms and considerations of said Act." Acts 1877, Ch. 121, Sec. 1.

Other amendments were also made by the latter act, but it is not necessary here to recite them. It is sufficient for present purposes to note the fact that the General Assembly, by the legislation mentioned, conferred upon every municipality in the State, of whatever population, and however incorporated, complete power to surrender its old charter and adopt a new one by pursuing the course prescribed therefor.

In strict conformity to the provisions of those acts, an election was held in the town of McMinnville, on the second day of November, 1901, and a proposition to surrender its old charter and adopt a new one was duly carried by a vote of 254 to 77.

All additional steps requisite to the complete accomplishment of the desired change were formally taken in proper order of succession, the new certificate of incorporation being appropriately registered on the sixth day of November, 1901, at 9:40 o'clock in the morning.

J. W. Brinkley, the plaintiff in error, was a saloonist, doing business in McMinnville at the time. After being notified personally of the issuance of the new charter, and then of its registration, he, nevertheless, on the next day made the sale of whisky for which he stands convicted.

We have no doubt of the correctness of the judgment against him, whatever his views of the law of the case may have been.

There can be no valid objection, on constitutional grounds, to any of the enactments involved. Those comprising the four-mile law have already passed that test successfully, in the cases hereinbefore cited, and those relating to the establishment and change of municipal corporations are likewise within the broad domain of constitutionality. It is entirely within the constitutional power of the General Assembly, by general statute, to authorize any and every suitable community to become incorporated in the first instance for governmental purposes, and also to authorize those already incorporated, under special or general charters, to surrender them and adopt others. The grant of such authority is not a delegation of legislative power, but a legitimate exercise of that exclusive function.

As a legal result of the election, and subsequent steps taken by the voters of McMinnville, the old charter of that town was "forever renounced and surrendered" (Acts 1875, Ch. 92, Sec. 14), and the territory previously covered thereby became subject to the new charter from the date of its final registration, November 6, 1901.

A municipal charter is not only the measure of corporate powers, but it is also the beginning and the end of corporate life; and that life is a distinct, indivisible thing. When a charter is completely granted, a distinct corporate entity comes

into being, and when the charter is completely surrendered, the corporate entity ceases to exist. So ·the life of the old town of McMinnville, as a distinct legal entity, began when the old charter was granted, and the life of that town ceased when that charter was surrendered. The change was not a mere amendment of the old charter, a simple transmutation of the existing corporate entity, but an entirely different thing. The legal result was twofold: (1) there was an absolute extinguishment of one corporate entity, and (2) the original establishment of another one.

Although subject to the contracts of the old corporation (Acts 1875, Ch. 92, Sec. 14, proviso), this new charter was, in contemplation of law, the inception of . a new municipality, the beginning of a new and distinct corporate existence; and, having been incorporated after the passage of the Act of 1899 (Ch. 221), with a population of only 1,980 by the Federal census of 1890, this new municipality was from the start subject to the provisions òf the four-mile law as amended by that Act.

What has been said in this case is equally applicable in the case of *Harry Bonner* v. *The State,* and in that of *W. D. Hughes* v. *The State,* from the same Court. An affirmance will be entered in all of them.