Wright v. Cunningham.

## J. T. WRIGHT *v.* W. H. CUNNINGHAM.

*(Knoxville.*   September Term, 1905.)

1. **STATUTES.** Words "this act" in an amending statute apply and have reference to the original statute as amended, and not to the amendment itself, when.

   Where a statute so amends a former statute as to strike out a certain section thereof and to provide that "this act" shall only apply to such counties as may adopt the same by majority vote, the words "this act" apply and have reference to the original statute as amended, and not solely to the amendment itself. (*Post, pp.* 451, 452.)

   Acts cited and construed: 1903, ch. 177; 1905, ch. 316.

2. **SAME.** Words supplied by intendment to express the evident and obvious intention, when; case in judgment.

   Ambiguous or meaningless clauses in a statute may be rejected, or words supplied by intendment to express the obvious intention of the legislature; and, therefore, where a statute, amending a former statute so that it shall be in force only in counties adopting it by a majority vote, declares that "the ticket" to be used at elections to put the same in force "shall provide for those favoring the small stock law, 'For small stock law,' and those 'Against said law,'" there is evidently an omission, which will be supplied to make the statute read that "the ticket shall provide for those favoring the small stock law, 'For the small stock law,' and for those opposing the small stock law, 'Against the small stock law." (*Post, pp.* 452, 453.)

   Acts cited and construed: 1903, ch. 177; 1905, ch. 316.

   Case cited and approved: Nichols v. Loyd, 111 Tenn., 145.

3. **SAME.** Statute, providing that a former statut shall be in force only upon a majority vote of counties, operates as amendment, not as a repeal of the former statute, when.

A statute amending a former statute by striking out a certain section thereof, but leaving the remainder of the body of the act as before, with a provision that the statute as so amended shall be in force only in such counties as shall adopt the same by a majority vote, operates as an amendment only, and not as a repeal of the former statute, if it be constitutional to make the operative effect of a statute depend upon the vote of the people to be affected thereby, which is denied as shown in the ninth headnote. (*Post, pp.* 451, 453, 454.)

Acts cited and construed: 1903, ch. 177; 1905, ch. 316.

4. **SAME.** Title of amendatory statute, reciting title or substance of amended statute, need not indicate character of amendment germane to the title of the amended statute.

The title of the amendatory statute, reciting the title or substance of the statute amended, need not in any way indicate the character of the amendment, where the amendment is germane to the subject of the original statute, and is embraced within the title of such amended statute; and, therefore, an amendatory statute, providing that the amended statute shall apply only to counties adopting it by a majority vote, is not invalid as containing a subject not expressed in its title, for such provision is germane to the title of the original statute, for the reason that the time when a statute shall go into effect must necessarily always be germane to its title and to all its contents. (*Post, pp.* 451, 454, 455.)

Acts cited and construed: 1903, ch. 177; 1905, ch. 316.

Cases cited and approved: Hyman v. State, 87 Tenn., 109-111; Goodbar v. Memphis, 113 Tenn., 20.

Wright v. Cunningham.

5. **SAME.** Statute, amending a former statute by providing that it shall be operative only in counties adopting it by a majority vote, is not unconstitutional as suspending a general law, when.

A statute, amending a former statute by providing that it shall be operative only in counties adopting it by a majority vote, is not unconstitutional as suspending a general law, because if the mandatory statute be operative at all, it must take effect according to its purport as an amendment of the former statute; and in that case it is treated as if incorporated into the body of the original statute, and the two statutes from that time become one statute. (*Post, pp.* 451, 455, 456.)

Acts cited and construed: 1903, ch. 177; 1905, ch. 316.

Constitution cited and construed: Art. 11, sec. 8.

Case cited and approved: Goodbar v. Memphis, 113 Tenn., 20.

6. **SAME.** May be made to take effect in the future or upon a condition or contingency, when.

A statute perfect in form, with all the prerequisites and safeguards provided by the constitution for the enactment of laws complied with by the legislature in passing it, is a valid law, although the time of taking effect is postponed, or is made to depend upon some condition or contingency selected by the legislature, and not dependent upon the action or vote of the people or other power than that of the legislature whose intent must be expressed in the statute. (*Post, pp.* 457, 458.)

Constitution cited and construed: Art. 2, sec. 20.

Cases cited and approved: State v. Railroad, 16 Lea, 136; State, ex rel., v. Trewhitt, 113 Tenn., 561, 572, 573.

7. **SAME.** Legislative power of the legislature is unlimited except as restrained by State and federal constitutions.

The legislature of the State has all powers of legislation, except in so far as it may be restrained by the constitution of the State, or that of the United States, expressly or by necessary implication. (*Post, pp.* 465, 466.)

Case cited and approved: Redistricting Cases, 111 Tenn., 234, 291, 292.

**8. SAME.** Legislative power cannot be delegated by the legislature, except in special instances specified in the constitution, or existing before it, and continued after it.

Legislative power cannot be delegated, except in those special instances in which the constitution itself authorizes such delegation (such as submitting the vote to the people of counties and cities loaning their credit or taking stock in corporations changing counties or their lines, or county seats, and amendments to the constitution), or those sanctioned by immemorial usage originating anterior to the constitution and continuing unquestioned thereunder (such as powers conferred upon municipal corporations in their charters and by statutes, and powers conferred upon the quarterly county courts for the management of local matters), but such latter powers originating before the constitution and continuing afterwards are to be delegated to the governing bodies of the municipal corporations or counties, and not directly to the people themselves, except the question of the acceptance, rejection, or surrender of municipal charters may be submitted to a vote of the people. (*Post, pp.* 464-478.)

Constitution cited and construed: Art. 1, sec. 23; art. 2, secs. 1, 2, 3, and 29; art. 11, sec. 3.

Cases cited and approved: Maury Co. v. Lewis Co., 1 Swan, 236, 240; Grant v. Lindsay, 11 Heis., 666; Brinkley v. State, 108 Tenn., 475; Redistricting Cases, 111 Tenn., 253-257.

**9. SAME.** Effectiveness cannot be made dependent upon a popular vote, and a statute so providing is unconstitutional, when.

With the special exceptions stated in the foregoing headnote, no legislative act can be so framed as that it must derive its efficacy from a popular vote, and a statute, providing that it shall be effective only in such counties as may adopt it by a majority vote of the legal voters, is unconstitutional and void. (*Post, pp.* 456-470.)

Acts cited and construed: 1903, ch. 177; 1905, ch. 316.

Wright v. Cunningham.

Cases cited and approved: Barto v. Himrod, 8 N. Y., 483; Paul
v. Circuit Judge, 50 N. J. Law, 585 (in dissenting opinion);
In re Municipal Suffrage to Women, 160 Mass., 586; State, ex
rel., v. Forkner, 94 Iowa, 1; Ex parte Wall, 48 Cal., 279; Mor-
ford v. Unger, 8 Iowa, 82; Santo v. State, 2 Iowa, 165; State
v. Beneke, 9 Iowa, 203; State v. Wilcox, 45 Mo., 458; Gibson
v. Mason, 5 Nev., 283; State v. Hayes, 61 N. H., 264; Thorne
v. Cramer, 15 Barb. (N. Y.), 112; People v. Stout, 23 Barb.
(N. Y.), 349; Parker v. Commissioners, 6 Pa., 507; Railroad
v. Clinton, 1 Ohio St., 77; People v. Collins, 3 Mich., 343.

Cases cited and disapproved: State v. Parker, 26 Vt., 357; Smith
v. Janesville, 26 Wis., 291; In re Richard Oliver, 17 Wis., 681;
State, ex rel., v. O'Neill, 24 Wis. 149.

---

FROM RHEA.

---

Appeal from the Circuit Court of Rhea County.—Jo-
SEPH C. HIGGINS, Judge.

MR. JUSTICE NEIL made a statement of the case as fol-
lows:

This action was brought to recover only a small sum
of money, $2.50, the amount of damages claimed by the
defendant for the keep of certain hogs which tres-
passed upon the land of the defendant; but it involves
the constitutionality of an amendment to an act of the
legislature, presently to be mentioned, of a very impor-

tant character.   The circuit judge held the amendment inoperative, and therefore decided the case against the plaintiff below, and he has appealed and assigned errors.

The original statute was chapter 177, p. 408, of the Acts of 1903, and is as follows:   "An act to prohibit the running at large of hogs, sheep and goats in Tennessee, in counties having a population by the federal census of 1900, or any subsequent federal census of between fourteen thousand two hundred, and fifteen thousand, and fixing the penalty for violation of the same.

"Section 1.   Be it enacted by the general assembly of the State of Tennessee, that it shall be hereafter unlawful for any owner of hogs, sheep, and goats, to allow same to run at large in counties of Tennessee, having a population by the federal census of 1900, or any subsequent federal census of between fourteen thousand two hundred and fifteen thousand.

"Sec. 2.   Be it further enacted, that any damage done by said stock running at large shall constitute a lien upon said stock, and may be enforced by judgment and execution against the owner thereof before any justice of the peace of the counties to which this act may apply.

"Sec. 3.   Be it further enacted, that any party upon whom such stock may trespass shall have the right to take up and confine said stock, giving same good feed and attention, and shall be entitled to reasonable compensation for same, and shall have a lien upon said stock for their keep.

"Sec. 4. Be it further enacted, that any violation of the provisions of this act shall be declared a misdemeanor and punishable by a fine of not less than two nor more than five dollars.

"Sec. 5. Be it further enacted, that all laws and parts of laws in conflict with this act be and the same are hereby repealed, and that this act take effect on and after the first day of May, 1903, the public welfare requiring it."

Passed March 24, 1903.

Approved March 26, 1903.

The amending act is chapter 316, p. 670, of the Acts of 1905, and is as follows:

"An act to amend chapter 177 of the Acts of 1903, being an act to prohibit the running at large of hogs, sheep and goats in counties having a population by the federal census of 1900, or any subsequent federal census of between fourteen thousand two hundred and fifteen thousand, and fixing the penalty for the violation of same.

"Section 1. Be it enacted by the general assembly of the State of Tennessee, that chapter 177 of the published Acts of 1903 of Tennessee be so amended as to strike out section 2 and provide that this act shall only apply to such counties as may adopt the same by a majority vote of the legal voters of said county at a legal election held for said purpose by the commissioners of election: Provided further, that the tickets used in said election shall be in conformity of law, and in such districts where the Dortch law applies the tickets shall conform thereto.

The tickets shall provide for those having the small stock law, 'for the small stock law' and those 'against said law.' The election commissioners, as in other elections, shall prepare the returns and declare the result, and all laws in conflict are hereby repealed."

Passed April 6, 1905.

Approved April 12th, 1905.

The population of Rhea county, by the federal census of 1900, was 14,318, and the act of 1903, therefore, applied to it.

D. L. Snodgrass, B. G. M'Kenzie, and W. L. Givens, for plaintiff.

V. C. Allen and Burkett, Miller, Mansfield & Swofford, for defendant.

Mr. Justice Neil, after stating the case as aforesaid, delivered the opinion of the court.

1. It is insisted for the defendant that the expression "this act," appearing in the act of 1905, applies to that act itself, with the result that the effect of the amendment is made to depend upon the vote of such counties as may adopt it. This is an incorrect view. The expression quoted has reference to the act as amended.

2. It is insisted that the amendment is fatally obscure because, it contains the following sentence: "The ticket shall provide for those favoring the small stock law, 'for the small stock law' and those 'against said

law.' Evidently there was an omission between the words "and" and "those" of the word "for," and after the word "those" an omission of the expression "opposing the small stock law." As thus corrected, the sentence would read: "The ticket shall provide for those favoring the small stock law, 'for the small stock law,' and for those opposing the small stock law, 'against the small stock law.' The word "said" in the expression "against said law," of course refers to the small stock law, and the intention of the act was that the ticket of those opposing the law should read "against the small stock law."

It is a well-known canon of construction that an ambiguous or meaningless clause in a statute may be rejected, or words supplied by intendment to express the obvious intention of the legislature. *Nichols & Sheperd Co.* v. *Loyd,* 111 Tenn., 145, 76 S. W., 911.

3. It is insisted that the effect of the act of 1905 was to repeal the act of 1903. It is said that, while purporting to amend the former act, the latter really repeals it. The argument in support of this proposition is that the act of 1905 converts the act of 1903 from one in operative effect to an act that does not take effect, except upon a contingency. While it is sometimes difficult to distinguish between an amendment and a repeal, we do not think that the present case presents an instance of such difficulty. The body of the act remains as before, with the exception of section 2, which is stricken out, and the effect of the second act is simply to convert the

body of the first, with the exception stated, from a law immediately operative into one effective only upon its being adopted by the vote of the counties referred to in such latter act. We think that such a change may be made by way of amendment, if it be constitutional to make the operative effect of a statute depend upon the vote of the people to be affected thereby. The latter is a subject which will be presently considered.

4. It is insisted that the act of 1905 contains two subjects, and hence violates section 17 of article 2 of the constitution, which provides that: "No bill shall become a law which embraces more than one subject, that subject to be expressed in the title. All acts which repeal, revive, or amend former laws shall recite in their caption, or otherwise, the title or substance of the law repealed, revived or amended."

The objection made under this head is that the caption of the act of 1905 makes no mention of the election provived for in the body of the act; hence that the body is broader than the title. The rule upon this subject is stated in *Hyman* v. *State,* 87 Tenn., 109-111, 9 S. W., 372, 1 L. R. A., 497. Referring to the act under consideration in that case, the court said that the title to the amendatory act in no way indicated the character of the amendment beyond a correct recital of the title of the act amended. The court then continued: "It is not, however, important that the title of an amendatory act shall do more than recite the title or substance of the act amended, provided the amendment is germane to the

subject of the original act and is embraced within the title of such amended act. In other words, if the title of the original act is sufficient to embrace the matter covered by the amendment, it is unnecessary that the title of the amendatory act should of itself be sufficient."

This rule was referred to and approved in the recent case of *Goodbar* v. *Memphis,* 113 Tenn., 20, 35, 81 S. W., 1061.

The question, then, to be determined is whether the provision in respect of the election mentioned in the act of 1905 are germane to the matters embraced under the caption of the act of 1903. If we assume that the act of 1903 might have been so framed under its caption as to provide that it should become operative upon the contingency of an election by the people, then the matter contained in the present amendment would be germane. We think it clear that, if such provisions in statutes are constitutional at all, the act of 1903 might have been so framed, since the time when an act shall go into effect must necessarily always be germane, not only to its title, but to all of its contents.

5. It is insisted that the act of 1905 suspends a general law for the benefit of particular individuals, contrary to const., art, 11, section 8, which provides: "The legislature shall have no power to suspend any general law for the benefit of any particular individual, nor to pass any law for the benefit of individuals inconsistent with the general laws of the land; nor to pass any law granting to any individual or individuals, rights, privi-

leges, immunities, or exemptions other than such as may be, by the same law extended to any member of the community who may be able to bring himself within the provisions of such law."

It is not insisted in the brief of defendant's counsel that the act of 1903 is a partial law, but it is referred to and treated as a general law. The insistence is that the act of 1905 violates the section of the constitution last quoted, in that it suspends the said act of 1903. We are of opinion that this is a misconception of the meaning of the word "suspend," as used in the section of the constitution quoted. The act of 1905, if it be operative at all, must take effect according to its purport as an amendment of the former act. In that case it is treated as if incorporated into the body of the original act, and the two from that time become one act. *Goodbar* v. *Memphis*, 113 Tenn., 20, 81 S. W., 1061. It does not, therefore, purport to suspend the former act, but simply to amend it, and it cannot be held void as in violation of the section of the constitution just referred to, if its substance be proper matter for amendment, and we have already held that it is proper matter for amendment if it be constitutional to pass laws to take effect upon a contingency.

6. It is insisted that the act of 1905 cannot be treated, constitutionally, as an amendment to the act of 1903, inasmuch as, when the two acts are thus consolidated into one, the resultant law is made to depend for its opera-

tive and effective potency upon a vote of the people. This is the chief question in the case, and the one which has been argued more extensively than any other.

There is no doubt that, if a statute be perfect in form when it leaves the hands of the legislature, that body, in passing it, having complied with all of the prerequisites and safeguards provided by the constitution for the enactment of laws, such statute is a valid law, even though it do not take effect immediately upon its passage. The constitution (article 2, section 20) provides that no general law "shall take effect until forty days after its passage, unless the same or the caption shall state that the public welfare requires that it should take effect sooner." And it has been held that the legislature may, by the terms of the act itself, postpone its taking effect to a period beyond the forty days even. *State, ex rel.,* v. *Trewhitt,* 113 Tenn., 561, 572; 573, 82 S. W., 480. In such cases the instrument has, by the authority of the legislature, become an expression of the legislative will in the form of a rule of action prescribed for the regulation of the conduct and affairs of the people; but it is a part of the same expression that the people shall not be compelled or permitted to act thereunder until the expiration of a time fixed. It is tantamount to saying that on and after so many days from the passage of this act the rule of action shall be thus and thus. The statute is vitalized immediately upon full compliance by the legislature with the requirements of the constitution for the enacting of laws. This is one thing. The time

when it shall be the duty of the people to comply with its provisions is another; the latter depending upon the terms of the act itself.

The act may provide upon its face that this duty of compliance may depend upon the happening of a condition or contingency. It has been so held in this State (*State* v. *T. C. I. & R. R. Co.*, 16 Lea, 136) ; and this rule is general.

The controversy in the authorities arises over the nature of the condition or contingency; specifically, whether a favorable vote of the people may be made the condition. On the one hand it is said that the event must be such as, in the judgment of the legislature, affects the question of the expediency of the law, and that upon this question the legislature must exercise its own judgment definitely and finally, and can appeal to no other man or men to judge for them. Per Ruggles, C. J., in *Barto* v. *Himrod*, 8 N. Y., 483, 59 Am. Dec., 506; Cooley, Const. Lim. (7th Ed.), 169. The point was thus put by Reed, J., in his dissenting opinion in *Paul* v. *Gloucester Co. Circuit Judge*, 50 N. J. Law, 585, 15 Atl., 272, 1 L. R. A., 86: "The difference between the statutes based upon a valid contingency and those based upon a contingency void as a delegation of legislative power may, I think, be clearly stated. The first is a statute ordaining a fixed rule of civil conduct applying to a certain prescribed condition of fact, which may arise *in futuro*. The last is a statute which leaves to the people the power to say whether, when such a rule has been enacted, it shall ever

become operative. One leaves the rule a law ready to operate upon the subject-matter whenever it arises. The other leaves it to another to say whether the rule shall ever become a law." 15 Atl., 286, 1 L. R. A., 96. The opposite view is thus stated by Redfield, C. J., in *State v. Parker*, 26 Vt., 357: "If the operation of a law may fairly be made to depend upon a future contingency, then, in my apprehension, it makes no essential difference what is the nature of the contingency, so it be an equal and fair one, a moral and legal one, not opposed to sound policy, and so far connected with the object and purpose of the statute as not to be a mere idle and arbitrary one. . . . It seems to me that the distinction attempted between the contingency of a popular vote and other future contingencies is without all just foundation in sound policy or sound reasoning, and that it has too often been made more from necessity than choice, rather to escape from an overwhelming analogy than from any obvious difference in principle in the two classes of cases; for . . . one may find any number of cases in the legislation of congress where statutes have been made dependent upon the shifting character of the revenue laws, or the navigation laws, or commercial rules, edicts, or restrictions of other countries. In same, perhaps, those laws are made by representative bodies, or it may be by the people of these States, and in others by the lords of the treasury or the boards of trade, or by the proclamation of the sovereign; and in all these cases no question can be made of the perfect legality of

our acts of congress being made dependent upon such
contingencies. It is in fact the only possible
mode of meeting them, unless congress is kept
constantly in session. The same is true of acts of con-
gress by which power is vested in the president to levy
troops and draw money from the public treasury upon
the contingency of a declaration or act of war, committed
by some foreign State, kingdom, empire, prince, or po-
tentate." In *Smith* v. *Janesville,* 26 Wis., 291, Dixon,
C. J., states the matter as follows: "But it is said that
the act is void, or at least so much of it as pertains to the
taxation of shares in national banks, because it was sub-
mitted to a vote of the people, or provided that it should
take effect only after approval by a majority of the elec-
tors voting on the subject at the next general election.
This was no more than providing that the act should
take effect on the happening of a certain future contin-
gency; that contingency being a popular vote in its fa-
vor. No one doubts the general power of the legislature
to make such regulations and conditions as it pleases
with regard to the taking effect or operation of laws.
They may be absolute, or conditional and contingent;
and, if the latter, they may take effect on the happening
of any event which is future and uncertain. Instances
of this kind of legislation are not infrequent. The law
of congress suspending the writ of habeas corpus dur-
ing the late rebellion is one, and several others are re-
ferred to in the case *In re Richard Oliver,* 17 Wis, 681.
It being conceded that the legislature possesses this gen-

Wright v. Cunningham.

eral power, the only question here would seem to be whether a vote of the people in favor of a law is to be excluded from the number of those future contingent events upon which it may be provided that it shall take effect. A similar question was before this court in a late case (*State, ex rel. Attorney General*, v. *O'Neill, Mayor, etc.*, 24 Wis., 149), and was very elaborately discussed. We came unanimously to the conclusion in that case that a provision for a vote of the electors of the city of Milwaukee in favor of an act of the legislature, before it should take effect, was a lawful contingency, and that the act was valid. That was a law affecting the people of Milwaukee particularly, while this was one affecting the people of the whole State. There the law was submitted to the voters of that city, and here it was submitted to those of the State at large. What was the difference between the two cases? It is manifest, on principle, that there cannot be any."

It is perceived that the illustration given by Redfield, C. J., fall directly within the description of the admissible contingencies, referred to by Ruggles, C. J., and Reed, J., which may be selected in advance by the legislature as determining the expediency of putting into operation the provisions of a given law, without recourse to the decision of the people of the state or country who are to be affected by that law, and whereby a vote may make the law operative or not, according to their own views of policy or expediency, without regard to the grounds on which the legislators acted in passing or pro-

posing the law; in the former class of cases the act be-
coming a law, and becoming operative by virtue of the
authority of the legislature itself, and in the latter being
reduced to a mere proposition to the electorate of a state,
and becoming operative as a law by virtue only of the
action of such electorate. It is also perceived that Dix-
on, C. J., offers the same class of illustrations and one
other; the last being the case of a town or city voting
to accept or reject a law provided by the legislature for
a specified locality in a state, a municipal corporation
of the state, a point to which we shall return later.

We incline to the views expressed by Ruggles, C. J.,
and Reed, J.

Judge Cooley, in his work on Constitutional Limita-
tions, while expressing his personal opinion that the rule
championed by Redfield, C. J., and Dixon, C. J., is the
sounder one, yet concedes in his text that the opposite
view has the weight of judicial opinion in its favor, so
far as concerns general laws applicable to a whole State.
Id. (7th Ed.), pp. 168, 169. See to the same effect the
discussion contained in the *Opinion of the Judges, in re
Municipal Suffrage to Women,* 160 Mass., 586, 36 N. E.,
488, 23 L. R. A., 113; and *State, ex rel.,* v. *Forkner,* 94
Iowa, 1, 62 N. W., 772, 28 L. R. A., 206; *Ex parte Wall,*
48 Cal., 279, 17 Am. Rep., 425; *Morford* v. *Unger,* 8
Iowa, 82; *Santo* v. *State,* 2 Iowa, 165, 63 Am. Dec., 487;
*State* v. *Beneke,* 9 Iowa, 203; *State* v. *Wilcox,* 45 Mo.,
458; *Gibson* v. *Mason,* 5 Nev., 283; *State* v. *Hayes,* 61 N.
H., 264; *Thorne* v. *Cramer,* 15 Barb. (N. Y.), 112; *Bar-*

Wright v. Cunningham.

to v. *Himrod,* supra.; *People* v. *Stout,* 23 Barb. (N. Y.), 349; *Parker* v. *Com.,* 6 Pa., 507, 47 Am. Dec., 480; *Cin., etc., Ry. Co.* v. *Clinton,* 1 Ohio St., 77; *People* v. *Collins,* 3 Mich., 343.

But the great majority of the cases seem to favor the constitutionality of what are termed "local option laws," under which the people of a county, city, or town are permitted to decide by a popular vote whether a given statute, providing police regulations, in respect of the sale of intoxicating liquors, the running of live stock at large, etc., shall be operative in such county, city, or town. Cooley, Const. Lim. (7th Ed.), 172-174; 19 Am. & Eng. Ency. Law (2d Ed.), pp. 488-496.

We have read and considered such of the cases cited as are accessible to us, and in the discussions contained in the majority and minority opinions appearing in these cases we have had the benefit of many other authorities not directly accessible, and we have attentively considered the grounds on which the numerical weight of authority is rested. It would be a useless consumption of time to attempt a discussion of these cases—indeed, an impossible task within the limits of a judicial opinion.

Suffice it to say that questions of State constitutional law are, in a very important sense, peculiarly local; and in every jurisdiction the court of last resort must decide for itself the meaning of the constitution under which it exists, and the validity of laws enacted by the legislative branch of the government. The decisions of other

courts, construing constitutions containing similar provisions, can be, at most, only suggestive and advisory.

Upon the subject of a popular vote to determine whether a legislative act shall be effective within a given subdivision of the State, our constitution contains the following provisions:

By article 2, section 29, it is provided that: "The general assembly shall have power to authorize the several counties and incorporated towns in this State, to impose taxes for county and corporation purposes respectively, in such manner as shall be prescribed by law . . . But the credit of no county, city, or town, shall be given, or loaned to or in aid of any person, company, association, or corporation, except upon an election to be first held by the qualified voters of such county, city, or town, and the assent of three-fourths of the votes cast at said election. Nor shall any county, city, or town, become a stockholder with others, in any company, association, or corporation, except upon a like election, and the assent of a like majority."

By article 10, section 2, it is provided: "No part of a county shall be taken off to form a new county or a part thereof without the consent of two-thirds of the qualified voters in such part taken off; and where an old county is reduced for the purpose of forming a new one, the seat of justice in said old county shall not be removed without the concurrence of two-thirds of both branches of the legislature, nor shall the seat of justice

of any county be removed without the concurrence of two-thirds of the qualified voters of the county."

By article 2, section 1, it was provided that: "The powers of the government shall be divided into three distinct departments: the legislative, executive, and judicial."

By section 2 it was provided that : "No person or persons belonging to one of these departments shall exercise any of the powers properly belonging to either of the others, except in the cases herein directed and permitted."

The only power of legislation which was reserved to the people at large was the power to vote upon amendments to the constitution. Article 11, section 3. For the rest, they were content to reserve to themselves the power of electing their officers for limited terms, and to reserve the various fundamental rights embraced in the bill of rights, only one of which latter, that embraced in section 23, bears upon legislation. That section declares "that the citizens have a right in a peaceable manner, to assemble together for the common good, to instruct their representatives, and to apply to those invested with the powers of government for redress of grievances, or other purposes, by address or remonstrance."

It is a well-recognized principle that the legislature of the State has all powers of legislation, except in so far as it may be restrained by the constitution of the State, or of the United States, expressly or by necessary impli

115 Tenn.—30

cation. *Redistricting Cases,* 111 Tenn., 234, 291, 292, 80
S. W., 750.

There is another principle which should be recalled
at this stage of the discussion, viz.: · That legislative
power cannot be delegated except in those special instan-
ces in which the constitution itself authorizes such dele·
gation, or those sanctioned by immemorial usage origi-
nating anterior to the constitution and continuing un-
questioned thereunder. The immemorial usage referred
to has found its expression in only two forms: Firstly,
in the powers conferred upon municipal corporations in
their several charters, and by general statutes applying
to such corporations and pertaining to the ordering and
administration of their local affairs; secondly, in the
powers conferred upon the quarterly county courts of
the several counties of the State for the management of
local matters. It is said in our cases that the counties of
the State are municipal corporations of a noncomplex
character, that the county courts constitute the govern-
ing body of these corporations, that these courts have
judicial and police powers, that "they can exercise that
portion of the sovereignty of the State communicated to
them by the legislature, and no more," and that "in the
exercise of the powers so conferred they become minia-
ture legislatures, and the powers so exercised by them,
whether they are called municipal or police, are in fact
legislative powers." *Grant* v. *Lindsay,* 11 Heisk., 666;
*Maury Co.* v. *Lewis Co.,* 1 Swan, 236, 240; *Redistricting
Cases,* 111 Tenn., 253-257, 80 S. W., 750. The origin of

the power to delegate legislative functions to the counties is not only to be found in ancient usage, but also may be traced to the direct language of the constitution, which provides, in article 11, section 9, that "the legislature shall have the right to vest such powers in the courts of justice, with regard to private and local affairs, as may be expedient."

But in delegating the powers mentioned to municipal corporations proper, or to counties, the legislature has always, under our system, dealt with the governing bodies of these organizations as the representatives of the constituent people, and not directly with the people themselves. Nor is the principle impaired by the force of the well-recognized rule that the acceptance, rejection, or surrender of municipal charters may be left by legislative act to the vote of the people, embraced in an existent or proposed municipality (Cooley Const. Lim. [7th Ed.], 165, 166; *Brinkley* v. *State,* 108 Tenn., 475, 67 S. W., 796), any more than by the fact that general charters may be framed for the creation of private corporations which may never become actually operative until adopted by the requisite number of persons organizing under them, and which may subsequently be surrendered by the same persons or their successors.

We see no difference in principle between making the operative efficacy of an act of the legislature dependent upon the contingency of a favorable vote of the whole constituency of the State (which we have seen cannot be done) and making the efficacy of an act dependent upon

the favorable vote of a single county, and there is none. Such difference cannot be found in the fact, as many cases in other jurisdictions hold, that the powers conferred upon such subordinate divisions of the State are police powers. The nature of the powers conferred may have, and no doubt does have, a controlling influence in determining whether they shall be delegated at all, but can have no influence in fixing the method under which they shall be devolved. Whether a legislative act embrace police powers or other powers, rights, or duties, at last it is but a legislative act, and to be valid must square with the constitution in all respects. All legislative acts, regardless of their contents or of their relative importance, must pass the same ordeal; not one, from a constitutional standpoint, being entitled to more consideration, or subjected to more stringent limitations, or to be treated with more leniency than any other. All must be measured with the same measure.

On these grounds we are of the opinion that, under our constitution, no legislative act can be so framed as that it must derive its efficacy from a popular vote. To be valid it must leave the hands of the legislature complete; not in the sense that it must go into effect at once, it is true, but it must at its birth bear the impress of sovereignty, and speak the sovereign will. If it contain within itself a condition or a contingency suspending to some future time, or to the happening of some future event, its obligatory force as a rule of action or conduct of the people for whom it was intended, that contingency

or that event must be one selected by the sovereign power itself as one, the happening of which shall render it immediately expedient that the suspension of the power inherent in the act shall cease, and that it shall at once become operative as a rule of conduct for the government of the people. Obviously, if the contingency selected be the favorable vote of the people who are to be governed by the law, it is that vote which makes the statute efficacious as a law, and not the antecedent will of the legislature, the constitutional law-making power. It is said in some of the cases that the vote is the effect of the law, and not the law the effect of the vote; but we think this is a mere play on words, since it is clear that, if all laws were made dependent upon such a contingency, representative constitutional government would be destroyed.

It is the purpose of our institutions, so far as they concern legislative bodies, that the popular will should find expression in the laws enacted by such bodies. This is to be accomplished, however, under the constitution, by sending representatives to those bodies whose views upon public questions are known, and whose faithfulness is approved, and by petition, and by instructions formulated in popular assemblies and forwarded to the law-making power, and by retiring from public life those who fail to truly represent their constituents, and by sending in their stead others who will supply what has been left undone, and correct what has been wrongfully done.

For the reasons stated, we are of the opinion that the amendatory act of 1905 above reproduced is unconstitutional and void, and that the judgment of the court below in favor of the defendant must be affirmed.