CLARK *et al. v.* STATE *ex rel.* BOBO.

*(Nashville,* December Term, 1937.)

Opinion filed Jan. 15, 1938.

430

Walker & Hooker, of Nashville, for relator, Bobo.

Roy H. Beeler, Attorney-General, and Henry C. Foutch, Assistant Attorney-General, for the State.

J. J. Bean, of Lynchburg, and Andrew Tanner, John C. Sandidge, and John M. Cate, all of Nashville, for defendants, Clark et al.

Mr. Justice DeHaven delivered the opinion of the Court.

The question before the court is the constitutionality of chapter 193, Public Acts of 1937.* The title of the act is as follows:

"An Act to be entitled An Act to permit, authorize and make lawful the manufacture of intoxicating liquors and other intoxicating drinks within the State of Tennessee; and to make lawful the possession, storing and transporting the products thereof, upon certain conditions."

Under section 1 of the act, the quarterly county court of any county within the State of Tennessee is required to call an election upon the question of permitting and legalizing the manufacture of intoxicating liquors within the boundaries of said county, when requested to do so by a petition bearing the signatures of 10 per cent., or more, of the qualified voters of such county, based upon the number of votes cast in the last preceding presidential election in such county. It is made the duty of the county election commissioners to call and hold an election, as provided, upon direction by resolution of the quarterly county court, and to place upon the ballots the words "For Manufacturing Liquors" and "Against

*This statute was again before the court for construction in State ex rel. Motlaw v. Clark, 173 Tenn., —.

Manufacturing Liquors.'' It is further provided that, if a majority of the qualified votes cast in said election in a county, so holding an election, favor the manufacture of intoxicating liquors, it shall be lawful to manufacture such liquors within the boundaries of such county, upon the payment of certain specified privilege taxes, and, under section 3 of the act, it shall not be unlawful for the owner or operator of a plant for the manufacture of intoxicating liquors to store or transport the products of said plant over and across the State of Tennessee, provided the storing shall be within the county authorizing the operation of said manufacture of said intoxicants, and while being transported to points outside of the State by the manufacturer or common carrier.

It is further provided, ''that nothing in this Act shall be construed as licensing or legalizing the sale of intoxicating liquors and/or intoxicating drinks within the State of Tennessee by any distillery or manufacturing plant authorized under this Act.'' Section 1. Under section 4 it is provided: ''That this Act take effect from and after its passage, the public welfare requiring it.''

It is averred in the original bill that defendant, William Clark, chairman of the quarterly county court of Moore county, was about to call a special meeting of the Court for the purpose of calling an election by the qualified voters of Moore county, under the provisions of chapter 193, Public Acts of 1937, upon the question of permitting the manufacture of intoxicating liquors within the boundaries of that county, and, unless enjoined, such meeting of the court would be held. The injunctive relief sought was predicated upon the allegation that the act in question is unconstitutional be-

cause violative of article 2, section 17, of the Constitution of the State of Tennessee, and of article 4, section 2, and of section 1 of the Fourteenth Amendment of the Constitution of the United States (for reasons set forth in the bill and hereinafter noticed), and because the act unlawfully delegates legislative power and authority to the qualified voters of the respective counties of the State. Upon the latter ground, alone, the chancellor sustained the bill on demurrer, held the act unconstitutional, and granted the injunction as.prayed. Both parties to the suit have appealed and assigned errors.

The sole question presented on the appeal of defendants is whether or not the Legislature, by the act in question, unlawfully delegated legislative power and authority to the qualified voters of the respective counties of the State with reference to the manufacture of intoxicating liquors for sale without the State.

The general rule is that, while the Legislature may not delegate its power to make a law, it may make a law to become operative on the happening of a certain contingency or event. Cooley on Constitutional Limitations (8 Ed.), 227; 6 R. C. L., 166; 12 C. J., 864. In *Wright* v. *Cunningham,* 115 Tenn., 445, 458, 91 S. W., 293, 295, the court said:

"The act may provide upon its face that this duty of compliance may depend upon the happening of a condition or contingency. It has been so held in this State (*State* v. *Tennessee C. I. & R. R. Co.*, 84 Tenn. [16 Lea], 136); and this rule is general."

In *Leeper* v. *State,* 103 Tenn., 500, 526, 53 S. W., 962, 967, 48 L. R. A., 167, the court said:

"The Legislature cannot delegate its power to make a law, but it can make a law to delegate a power to deter-

mine some fact or state of things upon which the law makes, or intends to make, its own action depend. *Lock's Appeal*, 72 Pa., 491, 498 [13 Am. Rep., 716]."

The authority cited involved a local option law on the sale of intoxicating liquors in one of the wards of the city of Philadelphia.

■ It is insisted, however, that the condition or contingency upon which a statute shall become operative cannot be a favorable vote of the people. Under the weight of authority, this is true with reference to a general law applicable to the State as a whole; but, the rule is otherwise when the law is complete in itself and the question only of its operative effect is left to local subdivisions of the State. In 12 C. J., 870, it is stated:

"As has been stated, it is the rule in most, although not all jurisdictions that, in the absence of constitutional authorization, the question whether an act shall become a law cannot be submitted to the voters of the entire state; but that, where there is affirmative legislation and the law is complete in itself as it leaves the Legislature, the question whether or not it shall be operative and enforceable in certain localities or local subdivisions of the state may be submitted to the voters of such localities or such subdivisions."

In Cooley on Constitutional Limitations (8 Ed.), 239, it is said:

"If the decision of these questions is to depend upon the weight of judicial authority up to the present time, it must be held that there is no power to refer the adoption or rejection of a general law to the people of the State, any more than there is to refer it to any other authority. The prevailing doctrine in the courts appears to be, that, except in those cases where, by the

constitution, the people have expressly reserved to themselves a power of decision, the function of legislation cannot be exercised by them, even to the extent of accepting or rejecting a law which has been framed for their consideration. . . . It is therefore held that the legislature have no power to submit a proposed law to the people, nor have the people power to bind each other by acting upon it. They voluntarily surrendered that power when they adopted the constitution. The government of the State is democratic, but it is a representative democracy, and in passing general laws the people act only through their representatives in the legislature.''

With reference to local option laws, however, MR. COOLEY (p. 245) states that they have been generally sustained. He says:

''They relate to subjects which, like the retailing of intoxicating drinks, or the running at large of cattle in the highways, may be differently regarded in different localities, and they are sustained on what seems to us the impregnable ground, that the subject, though not embraced within the ordinary power of the municipalities to make by-laws and ordinances, is nevertheless within the class of police regulations, in respect to which it is proper that the local judgment should control.''

The act here in question was a complete law when it passed through the several stages of legislative enactment and, by its terms, took effect from and after its passage. It required nothing further to give it validity. The question to be submitted to the voters of any county in the State, when 10 per cent. of the voters therein petition the county court to order an election, is whether or not intoxicating liquors shall be permitted to be man-

ufactured, under the act, within the boundaries of the county. The vote is not for or against the act. If Moore county voted against the manufacture of intoxicating liquors, the act would remain unaffected. So, if the voters of all the counties voted in the negative, the act would remain in full force and effect, because other and future elections could be held under the act in any of the counties of the State, the act containing no limitation on the number of elections that may be held.

In 33 C. J., 511, it is stated:

"Prior to the Eighteenth Amendment, it had been held that a 'local option' law, authorizing the municipal divisions of the state to decide by popular vote whether or not a prohibitive or restrictive liquor law should be in force in their limits, if it was a complete enactment in itself, requiring nothing further to give it validity, and depending upon the popular vote for nothing but a determination of the territorial limits of its operation, was a valid and constitutional exercise of the legislative power."

In a note under this section in the original text and in subsequent annual annotations cases from the courts of the United States and of 34 State courts are cited in support of the text.

The Supreme Court of the United States has approved local option laws, and in *Ohio ex rel. Lloyd* v. *Dollison,* 194 U. S., 445, 24 S. Ct., 703, 705, 48 L. Ed., 1062, the court said:

"Plaintiff in error further urges that to make an act a crime in certain territory and permit it outside of such territory is to deny to the citizens of the state the equal operation of the criminal laws; and this he charges against, and makes a ground of objection to, the Ohio

statute. This objection goes to the power of the state to pass a local option law; which, we think, is not an open question. The power of the state over the liquor traffic we have had occasion very recently to decide. We said, affirming prior cases, the sale of liquor by retail may be absolutely prohibited by a state. *Cronin* v. *Adams,* 192 U. S., 108, 24 S. Ct., 219, [48 L. Ed., 365]. That being so, the power to prohibit it conditionally was asserted, and the local option law of the state of Texas was sustained. *Rippey* v. *Texas,* 193 U. S., 504, 24 S. C., 516, [48 L. Ed., 767].''

In *Ex parte Beck,* 162 Cal., 701, 124 P., 543, 546, the court said:

''On the question whether a law relating to the retailing of intoxicating liquors relates to such a subject that its taking effect in any particular locality of the state may be made to depend upon a favorable vote of the electors, without involving a forbidden delegation of legislative power, the decisions are practically unanimous. This is so declared in Joyce on Intoxicating Liquors, sections 368, 371. The following decisions sustain this view. [Many cases are cited.] There is now practically no state holding to the contrary with the possible exception of Tennessee (see *Wright* v. *Cunningham,* 115 Tenn., 445, 91 S. W., 293); a few earlier decisions in Pennsylvania, Iowa, and Indiana having been practically overruled by later decisions, as above shown.''

In *Ex parte Everman,* 18 N. M., 605, 139 P., 156, 157, the court said:

''The constitutionality of 'local option' legislation is no longer an open question in American jurisprudence, and such laws are almost universally upheld. While some of the early cases, it is true, held such laws uncon-

stitutional and void, because based on a contingency, and, in effect delegated legislative powers to the people, . . . there is to-day practically no state holding to the contrary with the possible exception of Tennessee.''

Complainants, while conceding the general rule is as contended for by defendants, insist, in effect, that there can be no valid local option law in Tennessee, and they rely upon the case of *Wright* v. *Cunningham*, 115 Tenn., 445, 91 S. W., 293, to sustain this insistence. Before entering on a consideration of *Wright* v. *Cunningham*, certain other Tennessee cases should be mentioned.

In *Mayor & Aldermen of Morristown* v. *Shelton*, 38 Tenn. (1 Head), 24, the court held valid chapter 17, Acts of 1849-50, which authorized the county court upon certain conditions to create town corporations. The conditions were, as set forth in section 9 of the act:

''That when the inhabitants of any village, town or city, in the State of Tennessee, may desire to avail themselves of the privileges of this act, they shall prefer their petition to the county court of their respective counties, in which they shall set out in plain language such desire, and describe with certainty the metes and bounds of their respective corporations; and it shall be the duty of the county court . . ., to have the same spread upon the minutes of their respective courts and a copy of the entry properly certified to be registered in the register's office of the several counties.''

The court said, *inter alia*:

''This statute establishes a general and complete system of municipal government for towns, cities, and villages, and provides, in the 9th section, the mode by which the inhabitants of any particular town may adopt and organize under it. They shall apply by petition, to

the County Court setting forth their desire to avail themselves of its privileges. . . . The objection taken is; that the power to grant charters of incorporation is vested alone in the Legislature, and cannot be delegated to the Courts, or any other authority. The clause in the Constitution on this subject, is the *proviso* to the 7th section of the 11th article, in these words: 'The Legislature shall have power to grant such charters of incorporation as they may deem expedient for the public good.' This affirmative communication of this power to the Legislature operates as a negative upon its exercise by the Courts, or its delegation to any other authority. But then the question arises, has it been delegated by this act? We think very clearly not. . . . It [the act] gives the County Court no power on the subject but to record the petition for the benefit of a perfect and complete charter, and designates the boundaries to which it is to apply—that is, to prescribe the corporate limits of their town. It cannot add to or diminish the powers, privileges, and immunities granted, nor make the least change of any kind in the charter. The legislative will is fully declared in the act, and nothing is left to the Court but to locate and apply it to any community who may petition for it, and bring themselves within its provisions.''

In *Louisville & N. R. R. Co.* v. *County Court of Davidson County,* 33 Tenn. (1 Sneed), 637, 62 Am. Dec., 424, it was held that the reference to a vote of the people of a county on the question of subscription or no subscription of stock in a railroad company, as prescribed in the Act of 1851-52, chapter 117, did not invalidate the act by bringing it in conflict with the Constitution. Among other things, the court said:

"This is a general law, perfect, finished, and unconditional. It is not made to depend for its vitality upon the vote of the people, or any other future contingency. Whether Sumner, or any other county, act under it or not, it is still the law of the land, addressing itself to all the counties of the State, until repealed by the authority which gave it being. True, it will only operate in its vigor where and when the state of things provided for should transpire."

In *State* v. *Rhodes,* 146 Tenn., 398, 242 S. W., 642, 643, 22 A. L. R., 1544, it was said: "Since *Mugler* v. *Kansas,* 123 U. S., 623, 8 S. Ct., 273, 31 L. Ed., 205, it has not been doubted that full regulation of the manufacture and use of intoxicating liquors within its borders was the prerogative of the states under their reserved police powers." Having full and complete control over the subject, the State can prescribe such conditions as it may think proper upon which licenses can be obtained. As stated in Black on Intoxicating Liquors, section 45: "It becomes simply a question of degree of prohibition."

Passing to a consideration of the case of *Wright* v. *Cunningham, supra,* relied on by complainants, it appears that the act before the court in that case, chapter 316, Acts 1905, was one to prohibit the running at large of hogs, sheep, and goats "in counties having a population by the Federal Census of 1900, or any subsequent Federal Census, between fourteen thousand two hundred and fifteen thousand." On the population basis stated, the act applied to Rhea county alone. Section 1 of the act provides:

"That this Act shall only apply to such counties as may adopt the same by a majority vote of the legal voters of said county at a legal election held for said pur-

pose by the Commissioners of Election; Provided further, that the tickets used in said elections shall be in conformity of law and in such district where the Dortch law applies the ticket shall conform thereto. The ticket shall provide for those favoring the small stock law, 'for the small stock law' and those 'against said law.' The Election Commissioners, as in other elections, shall compare the returns and declare the result, and all laws in conflict are hereby repealed.''

The act did not provide any time when it should go into effect, other than the favorable vote for the law by the voters of Rhea county.

The court, upon the premise that a general statute applicable to the whole State cannot be submitted to the voters of the whole State for adoption, held that a statute applicable to one county of the State cannot be made dependent upon the favorable vote of the single county. The court said:

''We see no difference in principle between making the operative efficacy of an act of the Legislature dependent upon the contingency of a favorable vote of the whole constituency of the state (which we have seen cannot be done) and making the efficacy of an act dependent upon the favorable vote of a single county, and there is none.''

The above holding, we think, is in accord with the great weight of authority. It being the general rule, with which but few courts differ, that there can be no valid referendum to the voters of the entire State as to the adoption of a law applicable to the whole State, it must be likewise true that there could be no valid referendum to the voters of a single county as to the adoption of a law applicable alone to that county. The vo-

ters of Rhea county were authorized by the act to vote for or against the law. This amounted to a referendum to the voters of Rhea county on the question of the adoption of the law. Such a delegation of legislative authority is generally held beyond the power of the Legislature. In 12 C. J., 865, it is stated:

"But by the great weight of authority, the enactment of the statute itself may not be delegated nor made contingent on the action of officers or people; the act must be complete in itself, must be made law by the legislature, and only its effect and operation may be made dependent on the contingency."

The cases listed in the footnote in support of the above text are substantially the same cases as were cited by the court in *Wright* v. *Cunningham*. In all the cases referred to it will be found that the question submitted was whether or not a proposed statute should or should not become a law. The distinction between such proposed law and one complete in itself when it came from the Legislature, applicable to all of the counties of the State, and only its local operative effect left to the people of the several counties, is pointed out in *Dalby* v. *Wolf*, 14 Iowa, 228; *State ex rel.* v. *Forkner*, 94 Iowa, 1, 62 N. W., 772, 28 L. R. A., 206; *Fouts* v. *Hood River*, 46 Or., 492, 81 P., 370, 1 L. R. A. (N. S.), 483, 7 Ann. Cas., 1160.

When the language of *Wright* v. *Cunningham* is related to the character of the legislative act before the court in that case, it cannot be successfully maintained that the decision supports the contention that a local option law relating to the manufacture and sale of intoxicating liquors in the several counties of the State is invalid under the Constitution of Tennessee.

In *Arthur* v. *State*, 148 Tenn., 434, 256 S. W., 437, 438, cited by complainants, the act before the court provided for a circuit court in Washington county. It was provided that an election should be held on the first Monday in May, 1923, for the purpose of ascertaining whether a majority of the legal voters of the county favored the adoption of the act, and:

"If a majority of the lawful voters voting at said election vote 'for the circuit court' then this act shall take effect; but if a majority of the lawful voters voting at said election vote 'against the circuit court,' then this act shall not take effect and shall not become a law."

Upon the authority of *Wright* v. *Cunningham, supra,* the act was held unconstitutional.

Our conclusion is that chapter 193, Public Acts of 1937, does not delegate legislative power and authority to the qualified voters of the respective counties of the State.

Complainants, on their appeal from the decision of the chancellor, have assigned errors. The first assignment is, in substance, that the chancellor was in error in holding that chapter 193, Public Acts of 1937, was not in violation of that portion of article 2, section 17, of the Constitution of Tennessee, which is as follows:

"All acts which repeal, revive or amend former laws, shall recite in their caption or otherwise, the title or substance of the law repealed, revived or amended."

It is the insistence of complainants that the act shows on its face that it is not original legislation and that same is not complete in itself, since the act is without meaning unless it is read in connection with sections 11246 and 11247 of the Code.

The manufacture of intoxicating liquors is prohibited

in Tennessee by the sections of the Code just above mentioned. In *Motlow* v. *State,* 125 Tenn., 547, 145 S. W., 177, L. R. A., 1916F, 177, it was held that the Legislature had the constitutional power to prohibit the manufacture of intoxicating liquors for sale and exportation to other states and countries. Chapter 193, Public Acts of 1937, does not repeal sections 11246 and 11247 of the Code, but by implication amends those sections so as to permit the manufacture of intoxicating liquors, for transportation without the State, in those counties of the State voting for such manufacture. The act is, in effect, a proviso ingrafted on the original law. The Legislature, having authority to prohibit the manufacture of intoxicating liquors, had the authority to provide conditions under which such manufacture would be permitted. In *Schulherr* v. *Bordeaux,* 64 Miss., 59, 8 So., 201, 202, a case dealing with a local option law, the court said:

"The law existing before, and this act, together, evince the will of the legislature to be that the sale of liquors shall be prohibited or permitted, and licenses granted, if at all, as the voters of a county may decide at an election to be held for the purpose, if applied for, and, if no election is held, the matter is to remain as before. The act is a valid law, and must be upheld as such."

Chapter 193, Public Acts of 1937, does not violate article 2, section 17, of the Constitution of this State. This constitutional provision does not apply to acts which by their positive provisions operate to repeal or annul previous acts by necessary implication. *Scott* v. *Nashville Bridge Co.,* 143 Tenn., 86, 107, 223 S. W., 844; *State ex rel.* v. *Pearson,* 137 Tenn., 253, 258, 192 S. W., 164.

Complainants by their second assignment of

error complain of the action of the chancellor in holding that said act does not violate that portion of article 2, section 17, of the Constitution of Tennessee, which is as follows:

"No bill shall become a law, which embraces more than one subject; that subject to be expressed in the title."

It is insisted that the title of the act makes no mention of the provision contained in the body of the act for the calling of an election by the quarterly county court on the petition of 10 per cent. of the qualified voters of the county. The title of the act recites that it is an act to authorize and make lawful the manufacture, possession, storing, and transporting of liquors, "upon certain conditions." This was sufficient notice that the body of the act set forth and provided conditions upon which intoxicating liquors could be manufactured, possessed, and transported. The object of the constitutional provision as to the one subject of legislation is to prevent surprise or fraud upon the Legislature, by means of provisions in the bills of which the titles give no intimation. *Cannon* v. *Mathes,* 55 Tenn. (8 Heisk.), 504, 521. See Shannon's Annotation of the Constitution of Tennessee, p. 218 *et seq.*

The provisions contained in the body of the act here in question are germane to the purpose of the legislation expressed in the title. It is not required that all of the provisions of an act be set forth in the title. The test is that the title must give notice of the purpose of the act and that the provisions contained in the body of the act be germane to the title. We see no merit in this assignment.

Complainants by their third assignment of er-

ror assert that the chancellor was in error in holding that the act did not violate article 4, section 2, and section 1 of the Fourteenth Amendment of the Constitution of the United States. The insistence is that the act provides that intoxicating liquors may, upon a vote of the qualified voters of any county, be legally manufactured in such county, but may not be sold to the people of Tennessee, but may be sold to the citizens of any other State. It is, therefore, claimed that the act is discriminatory and vicious class legislation and void. No authorities are cited in support of this contention, and we think it is without merit.

Complainants by their fourth assignment assert that the act is void as being class legislation. The act accords to all the people of all the counties of the State the equal right to determine the question of whether intoxicating liquors may be manufactured. We can see no basis for the claim that the act is discriminatory or class legislation. No authorities are cited to support the contention made, and we find it to be without merit.

It is suggested that the manufacture, possession, and transportation of intoxicating liquor made lawful by the act in any county voting for manufacture and leaving it unlawful in counties not voting for manufacture is to deny to the citizens of the State the equal operation of the criminal laws. Among other cases, the Supreme Court of the United States in *Ohio ex rel. Lloyd* v. *Dollison,* 194 U. S., 445, 24 S. Ct., 703, 705, 48 L. Ed., 1062, herein cited and quoted from, in passing upon this exact question, said:

"This objection goes to the power of the state to pass a local option law; which, we think, is not an open question."

448

In *Re O'Brien,* 29 Mont., 530, 75 P., 196, 197, 1 Ann. Cas., 373, the court said, *inter alia*:

"The mere fact that the adoption of this law in Ravalli county, and its rejection or nonacceptance in Missoula county, for instance, will make that unlawful in the former which is lawful in the latter, does not render the act void. The error in the argument made in support of this contention lies in the assumption that the vote makes the law, and that what is a law in Ravalli county is not a law in Missoula county. The law is the same for all, and equally available to all. *Territory* v. *O'Connor,* 5 Dak., 397, 41 N. W., 746, 3 L. R. A., 355 [*supra*]; *State* v. *Pond,* 93 Mo., 606, 6 S. W., 469."

 It is suggested that the transportation of liquor, by the manufacturer or common carrier, from a county voting for manufacture, across counties not voting for manufacture, as allowed by the act, makes that not a crime by the manufacturer or common carrier which is a crime for all others. The Legislature could have, of course, repealed all laws with reference to the prohibition of the transportation of liquor. Having that right, the power to prohibit it conditionally must exist. The regulation that the transportation must be by the manufacturer or a common carrier is an incident to the right of manufacture, under the act. The manufacture being allowable only for sale without the State, provision for the transportation of the liquor was a necessity. Such transportation would be interstate commerce. Such regulation is reasonable in that the act confines transportation from the place of manufacture to points outside the State to recognized and responsible agencies, and prevents the transportation of liquor by all others, which the Legislature evidently regarded as

a possible course of infraction of the liquor laws. No person has the inherent right to transport intoxicating liquor, and the limiting of this right, under the conditions set out in the act, to the manufacturer or common carrier, cannot be said to be an arbitrary classification. Code, section 6619, for instance, prohibits the possession of opium, etc., but by paragraph "h" the prohibition does not apply to common carriers.

With the expediency or wisdom of legislation, this court has nothing to do. The Legislature is the sole and exclusive judge of those matters. We can but take a statute and measure its validity by the Constitutions of the State of Tennessee and of the United States.

After a careful consideration of the questions involved in this cause, we hold chapter 193, Public Acts of 1937, to be valid and constitutional. The decree of the chancellor holding the act unconstitutional must be reversed and the bill dismissed. Complainants will pay the costs of the cause.

GREEN, C. J., and McKINNEY and CHAMBLISS, JJ., concur.

### DISSENTING OPINION.

MR. JUSTICE COOK, delivered the dissenting opinion.

I concur in so much of the opinion of the Court as sustains the power of the Legislature to enact local option laws. An interesting case involving this subject is *Bowman* v. *Virginia State Entomologist,* 128 Va., 351, 105 S. E., 141, 12 A. L. R., 1121.

My difficulty about the conclusion of the Court is that

we have in this State general statutes which denounce as crimes the manufacture, possession, storage and transportation of intoxicating liquor and impose severe penalties which are drastically, sometimes harshly, applied throughout the State. These laws the Legislature left in force and then delegated power to the voters of a county to suspend them within their county.

It is beyond the power of the Legislature to suspend such general laws by direct legislation or, under the guise of local option, delegate the power to the voters of a locality to suspend them.